# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IHASSAN F. DAHLEH, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | No. 17 C 8005 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ANNA MUSTAFA and GHAZI MUSTAFA, | ) | |
| | ) | |
| Plaintiffs-Appellees. | ) | |

## OPINION AND ORDER

This case arises out of a Chapter 7 bankruptcy petition filed by Ihassan Dahleh and the subsequent adversary proceeding filed by Anna and Ghazi Mustafa, in which they objected to the dischargeability of Dahleh's debt to them. After a trial before the bankruptcy court, the court determined that Dahleh (a) concealed, transferred, or removed property of the estate in violation of 11 U.S.C. § 727(a)(2); (b) failed to keep records in a form adequate to ascertain his financial condition in violation of 11 U.S.C. § 727(a)(3); (c) knowingly and fraudulently made false oaths or accounts in violation of 11 U.S.C. § 727(a)(4); and (d) failed to explain satisfactorily the loss of estate assets in violation of 11 U.S.C. § 727(a)(5). Because of these violations, the bankruptcy court denied Dahleh a discharge of the debt he owed the Mustafas. Dahleh filed an appeal to this Court. The Court affirms the denial of the discharge, finding that the bankruptcy court did not commit clear error in finding that Dahleh concealed, transferred, or removed property of the estate in violation of § 727(a)(2), and knowingly and fraudulently made false oaths or accounts in violation of § 727(a)(4).

# BACKGROUND

Dahleh petitioned for Chapter 7 bankruptcy in 2015. He listed the Mustafas as unsecured creditors with a $475,000 claim. The Mustafas then filed an adversary proceeding related to Dahleh's bankruptcy, in which they sought to prevent Dahleh from discharging his debt to them. The Mustafas pleaded two counts contending the debt was nondischargeable, but the bankruptcy court proceeded to trial only on the claim arising under 11 U.S.C. § 727 (count II of the adversary complaint). After hearing evidence over the course of eight afternoons in February and March 2017 and receiving proposed findings of fact and conclusions of law from the parties, the bankruptcy court issued its decision on count II of the adversary complaint on October 19, 2017. The bankruptcy court had before it several contested factual issues and found as follows:

First, the parties disputed Dahleh's ownership interest in Liquor Station, Inc. ("Liquor Station"). In his bankruptcy schedules, Dahleh indicated that he held only a 5% ownership interest in Liquor Station, with his brother Gus owning the remaining 95% interest. But the bankruptcy court found that Dahleh repeatedly misrepresented his ownership interest in Liquor Station to the bankruptcy court based on other representations Dahleh made about his ownership of Liquor Station. Specifically, Dahleh stated on liquor license renewal applications filed with the Illinois Liquor Control Commission in 2012, 2013, and 2014 that he owned 100% of Liquor Station, only reporting to the Commission on November 30, 2015, after filing his bankruptcy petition, that Gus owned 95% of the company. Dahleh made similar representations to the Town of Cicero's Liquor Commission, only changing from his claim of 100% ownership to 5% ownership in November 2015. Dahleh also testified that he never formalized or documented the ownership interests in Liquor Station with his brother. The bankruptcy court noted the difficulty in distinguishing between Liquor Station's and Dahleh's personal business because of Dahleh's

recordkeeping practices, that Dahleh ran the business on a day-to-day basis, and that he represented that he was the owner of Liquor Station to the individual from whom he purchased the business' assets. The bankruptcy court acknowledged that both Dahleh's personal income tax filings and Liquor Station's corporate tax filings for 2011, 2012, and 2013 indicated that Dahleh only held a 5% interest in Liquor Station, but it also noted that these tax filings were all filed on September 23, 2014, which was after Dahleh had consulted with attorneys regarding filing bankruptcy. Considering the evidence presented to it, the bankruptcy court concluded that Dahleh's "repeated but uncorroborated assertion that a transfer to Gus Dahleh took place at some point is nothing more than an attempt to mask his ownership of Liquor Station, Inc." *In re Dahleh*, Adv. No. 16 AP 00136, 2017 WL 4792191, at *6 (Bankr. N.D. Ill. Oct. 19, 2017).

The parties also disputed Dahleh's ownership interest in a Rolex wrist watch valued at over $30,000. Dahleh repeatedly pawned and redeemed the Rolex watch at New York Jewelers, a store in Chicago, Illinois, signing an agreement each time representing that the watch was his own personal property and "not subject to any claims of ownership, possession or interest by any other person or entity." *Id.* at *4 (quoting Pl.'s Trial Ex. 50). Dahleh signed each of the pawn tickets in his own capacity. At the time Dahleh filed for bankruptcy, New York Jewelers had possession of the watch. Dahleh did not indicate that New York Jewelers was a secured creditor or disclose the watch as personal property in his schedules. He also represented at the meeting of creditors that he did not own any jewelry worth over $2,500. Two days after Dahleh filed for bankruptcy, his father redeemed the watch from New York Jewelers. Then, on March 3, 2015, Dahleh again pawned the watch to New York Jewelers, representing that he owned it. At some point during the bankruptcy case, he forfeited the watch to New York Jewelers.

Dahleh claimed that at the time he filed for bankruptcy, Liquor Station owned the watch, having previously redeemed it in January 2014. The bankruptcy court did not credit Dahleh's assertion that Liquor Station owned the watch, finding that Dahleh did not produce any written agreement documenting the transfer of ownership, indicate in his statement of financial affairs that he transferred the watch to Liquor Station within the two years preceding his bankruptcy, or inform New York Jewelers that the watch belonged to Liquor Station, instead representing that he personally owned the watch each time he pawned it. Although the owner of New York Jewelers testified that he did not ask individuals whether they owned the items they sought to pawn, the bankruptcy court found the pawn tickets to be "powerful evidence" that Dahleh was "the sole owner of the Rolex wrist watch." *Id.*

With respect to bank accounts, Dahleh disclosed on his schedule an account at PNC Bank but not accounts at BMO Harris Bank or TCF Bank. At trial, he testified that he did not know of these accounts or whether they were still active but then admitted that he learned of them shortly after filing bankruptcy. Dahleh admitted that he deposited funds into his BMO Harris account after filing bankruptcy but that the maintenance fees imposed by the bank consumed the funds. With respect to the TCF account, the court received evidence that Dahleh wrote two checks, one several days before filing his bankruptcy case and the other two weeks after, from the TCF account for over $6,000 that he then deposited into a PNC account for Liquor Station. The bankruptcy court acknowledged that Dahleh revealed these accounts at the meeting of creditors but noted that Dahleh did not amend his schedules to reflect these two bank accounts.

The bankruptcy court also found that Dahleh failed to include in his statement of affairs the name, address, and taxpayer identification number of 40/30 Dental, Inc., a dental practice in which he had held a 40% ownership interest until January 2013. Dahleh voluntarily disclosed

4

this asset during the meeting of creditors on January 9, 2016, but he did not subsequently update his bankruptcy schedule to reflect this interest.

Finally, the bankruptcy court found that Dahleh "r[a]n his business in such a way as to make it virtually impossible to discern what he has done with his cash flow over the last several years," noting that he "has regularly done business in cash, made deposits, paid bills and received deposits from businesses owned by his father, and has allowed his brother to use his accounts to speculatively purchase futures and options, which has resulted in large losses." *Id.* at *6.

Based on these factual findings, the bankruptcy court denied Dahleh a discharge under § 727(a)(2), (a)(3), (a)(4), and (a)(5). Specifically, the bankruptcy court determined that Dahleh repeatedly omitted or misrepresented his interests in property that he should have included in his bankruptcy schedules and that his actions taken together demonstrated a pattern of behavior intended to hinder, delay, or defraud the Mustafas in violation of § 727(a)(2). Relatedly, the court found Dahleh made misstatements in his schedules and during his trial testimony, knowing about his true ownership interest in certain assets while trying to obscure those interests, or in other cases recklessly omitting assets from his schedules, requiring the denial of a discharge under § 727(a)(4). The court also found Dahleh's recordkeeping to be "convoluted and contradictory," with Dahleh providing no "persuasive explanation for the state of his personal and his businesses' financial records" to allow the court to determine his financial health, requiring denial of discharge under § 727(a)(3). *Id.* Dahleh's poor recordkeeping also contributed to the denial of discharge under § 727(a)(5), with the court finding Dahleh unable to explain the unavailability of certain assets, such as money held in bank accounts and the Rolex watch.

**LEGAL STANDARD**

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court. The Court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). Under the clear error standard, the Court may reverse factual findings "only if, upon the entire record, [it] reach[es] 'the definite and firm conviction that a mistake has been committed.'" *In re Yonikus*, 974 F.2d 901, 903 (7th Cir. 1992) (quoting *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992)).

**ANALYSIS**

Dahleh argues that the bankruptcy court made numerous factual errors in finding that he owned 100% of Liquor Station and the Rolex watch and that his ownership of these assets justified denial of a discharge under § 727(a)(2) and (a)(4). Dahleh also argues that the bankruptcy court should not have denied him a discharge under § 727(a)(2) and (a)(4) for failure to amend his schedules to include the TCF and BMO Harris bank accounts and his interest in 40/30 Dental, Inc. Finally, Dahleh claims that the bankruptcy court erred in finding that he failed to keep information from which his financial condition could be ascertained and failed to explain the loss or deficiency of assets under § 727(a)(3) and (a)(5). The Court need only find that one of the bases for the bankruptcy court's denial of the discharge suffices to uphold the bankruptcy court's decision. *See Stamat v. Neary*, 635 F.3d 974, 983 n.6 (7th Cir. 2011) (affirming denial of discharge on one ground and declining to address the bankruptcy court's findings under other sections of § 727(a)).

The bankruptcy court found, based largely on the same facts, that Dahleh concealed, transferred, or removed property of the estate with an intent to defraud, hinder, or delay the

Mustafas in violation of § 727(a)(2), and that he knowingly and fraudulently made false oaths or accounts in violation of § 727(a)(4). The discharge exception under § 727(a)(2) "essentially consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)), *aff'd on other grounds sub nom. Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). To establish the discharge exception found in § 727(a)(4), the Mustafas had to show that (1) Dahleh made a statement under oath, (2) the statement was material to the bankruptcy case, (3) the statement was false, (4) Dahleh knew the statement was false, and (5) Dahleh made the statement with an intent to deceive. *Lardas v. Grcic*, 847 F.3d 561, 569 (7th Cir. 2017). With respect to the bankruptcy court's findings on these subsections, Dahleh argues that the bankruptcy court erred in (1) finding that he owned the Rolex watch and 100% of Liquid Station, (2) concluding that he acted knowingly and fraudulently, and (3) finding that Dahleh's omission of the bank accounts and interest in 40/30 Dental, Inc. was material to the bankruptcy.

Although Dahleh clearly believes that the bankruptcy court incorrectly decided the facts, this Court's review of the bankruptcy court's factual findings is deferential: "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted). Having reviewed the record, the Court finds the bankruptcy court's factual findings plausible, particularly given the fact that the bankruptcy court had the opportunity to judge the credibility of the witnesses. *Id.* at 734 ("[I]t is for the bankruptcy court to assess the credibility of witnesses and weigh evidence, and we will not second guess the

7

court's resolution of conflicting evidence."). The Court addresses Dahleh's specific challenges in more detail below.

### A. Ownership of Assets and Disclosure of those Assets

The bankruptcy court had sufficient evidence before it to find that Dahleh owned 100% of Liquor Station at the time he filed for bankruptcy, based on the representations made to the Illinois Liquor Control Commission, the Town of Cicero Liquor Commission, and Shihada Mustafa, the previous owner of Liquor Stations' assets, as well as the failure to document the alleged transfer of the 95% ownership interest to Gus. Similarly, with respect to the Rolex watch, the pawn tickets presented at trial clearly stated that Dahleh, not Liquor Station, owned the watch, which the bankruptcy court credited over Dahleh's testimony that the Liquor Station had assumed control over this asset. Such a conclusion draws further support from testimony at the trial regarding the lack of differentiation between Dahleh's and Liquor Station's financial affairs.

Dahleh does not challenge the fact that he did not disclose the bank accounts or his interest in 40/30 Dental, Inc. on his schedules, instead focusing on the fact that he did reveal these at the meeting of creditors.[1] Although the bankruptcy court acknowledged this disclosure, this does not change the fact that Dahleh made a false statement with respect to these interests in filing his schedules for purposes of § 727(a)(4). Therefore, the bankruptcy court did not err in its

---

[1] The Court does agree with Dahleh that Bankruptcy Rule 1007(h) does not appear to apply to Dahleh's failure to disclose the bank accounts and 40/30 Dental, Inc. here, where Dahleh did not acquire an interest in this property as provided by 11 U.S.C. § 541(a)(5). But this does not change the bankruptcy court's or this Court's analysis that Dahleh failed to disclose these assets as required in his bankruptcy schedules. Moreover, the bankruptcy court appears not to have taken any failure to amend the bankruptcy schedules to include the bank accounts into its § 727(a)(2) analysis, and no suggestion exists that Dahleh did not know of the interest in 40/30 Dental, Inc. at the time he filed for bankruptcy, instead only that he did not believe he needed to disclose it. This belief, however, is contrary to the requirements of bankruptcy law. *See Stamat*, 635 F.3d at 979 ("[T]he bankruptcy petition does not exempt assets no longer in existence.").

findings regarding ownership of the assets or whether Dahleh made false statements with regards to the assets at issue.

B.     **Materiality**

Next, the Court briefly addresses Dahleh's undeveloped challenge to the bankruptcy court's materiality finding for purposes of § 727(a)(4). Dahleh argues without citation that his failure to disclose the bank accounts, which totaled only several hundred dollars, and the defunct corporation could not be material to the bankruptcy to warrant denial of discharge under § 727(a)(4).[2] But "materiality in the bankruptcy context has a broad meaning; 'a fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Lardas*, 847 F.3d at 570 (quoting *Stamat*, 635 F.3d at 982). And "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *In re Yonikus*, 974 F.2d at 904; *see also Chlad v. Chapman*, No. 17 C 5198, 2018 WL 4144627, at *7 (N.D. Ill. Aug. 30, 2018) (rejecting notion that encumbered property and two accounts with less than $40 combined are immaterial because disclosure is mandatory and sheds light on a debtor's financial history). Therefore, the bankruptcy court did not err in finding that the omission of the bank accounts or Dahleh's interest in 40/30 Dental, Inc. was material to the bankruptcy.

---

[2] Because Dahleh's brief fails to develop the materiality argument, this Court could treat it as waived. *See Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017) ("But Ewell fails to develop this argument on appeal, and we have repeatedly noted that perfunctory and undeveloped arguments do not preserve a claim for our appellate review."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"). The Court nonetheless briefly addresses the issue.

9

### C. Fraudulent Intent

Dahleh's main argument on appeal is that the bankruptcy court made no findings that he had the required fraudulent intent under § 727(a)(2) and (a)(4). But the bankruptcy court specifically addressed both the standard for establishing fraudulent intent and its reasoning for finding "a pattern of behavior intended to hinder, delay or defraud" the Mustafas to warrant denying discharge under § 727(a)(2). *See In re Dahleh*, 2017 WL 4792191, at *6 (recounting the various misrepresentations and omissions Dahleh made regarding his interest in property). The bankruptcy court also discussed fraudulent intent with respect to § 727(a)(4), noting the "credible evidence that [Dahleh] knew about his true ownership interest in the Rolex wrist watch and in Liquor Station, Inc., but indicated otherwise in his schedules" and that he acted recklessly in omitting the bank accounts from the schedules, "which is functionally equivalent to fraud." *Id.* The Court reviews these findings for clear error, taking into account the requirement that the bankruptcy court need only have found fraudulent intent by a preponderance of the evidence. *Freeland*, 540 F.3d at 733; *Chlad*, 2018 WL 4144627, at *13.

Fraudulent intent can be established either by showing that the debtor knowingly intended to defraud or engaged in behavior demonstrating a reckless disregard for the truth. *In re Kempff*, 847 F.3d 444, 449 (7th Cir. 2017); *Stamat*, 635 F.3d at 982. Fraudulent intent is a factual question left for the bankruptcy judge, with the judge considering the debtor's "whole pattern of conduct." *In re Ratner*, 132 B.R. 728, 731 (Bankr. N.D. Ill. 1991) (quoting *In re Reed*, 700 F.2d 986, 991 (5th Cir. 1983)); *see also In re Yonikus*, 974 F.2d at 905 ("The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances."

(citations omitted)); *Chlad*, 2018 WL 4144627, at *9 ("[A] pattern or series of false statements may be used to establish a reckless disregard for the truth.").

After carefully reviewing the record, the Court finds that the evidence before the bankruptcy court sufficiently supports its conclusion that Dahleh acted with fraudulent intent, intentionally hiding his ownership interest in Liquor Station and the Rolex watch while also acting recklessly with respect to omitting the bank accounts and 40/30 Dental, Inc. from his schedules. The Court declines Dahleh's invitation to reassess the credibility of the witnesses at trial and reweigh the evidence on this matter. *See In re Kempff*, 847 F.3d at 449 ("[B]ecause an 'intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility,' the reviewing court's deference to the bankruptcy judge's ruling is particularly strong in this context." (quoting *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996))). Although Dahleh may have liked more specific or detailed factual findings on the issue of fraudulent intent, his claim that the bankruptcy court did not make any such findings is belied by the bankruptcy court's written opinion, *see In re Dahleh*, 2017 WL 4792191, at *6, and Dahleh has not cited any caselaw requiring more detailed findings than what the bankruptcy court provided. Therefore, the Court does not find that the bankruptcy court committed clear error in finding that Dahleh acted with the fraudulent intent required to satisfy either § 727(a)(2) or (a)(4).[3]

## CONCLUSION

For the foregoing reasons, the Court affirms the bankruptcy court's denial of Dahleh's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).

Dated: September 18, 2018

SARA L. ELLIS
United States District Judge

---

[3] Because the Court finds the bankruptcy court did not err with respect to § 727(a)(2) and (a)(4), it need not address Dahleh's arguments for reversal with respect to the bankruptcy court's findings denying discharge based on § 727(a)(3) and (a)(5). *See Stamat*, 635 F.3d at 983 n.6.